UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                        CASE NO.  21-60171-CR-SMITH

CINDI ELLIS DENTON,

    Defendant.
_____/

## SENTENCING MEMORANDUM

COMES NOW, the Defendant, CINDI ELLIS DENTON, by and through her undersigned counsel and files this Sentencing Memorandum for the Court's consideration at Sentencing. Ms. Denton, through counsel, respectfully urges this Court to impose a sentence based on the factors set forth in 18 U.S.C. § 3553 (a). For the reasons stated herein, we submit that a variance from the proposed guidelines sentence should be ordered and that a sentence below the advisory guideline is sufficient but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553 (a).   Ms. Denton states as follows:

### I. PRESENTENCE INVESTIGATION REPORT (PSI)

Ms. Denton has filed Objections to the Presentence Investigation Report with a Memorandum of Law and a Request for a Variance. [DE: 38] It is Defendant's position that the advisory sentencing guidelines are a total offense level of 12 and a criminal history category of I, with a guidelines imprisonment range of 10 to 16 months in Zone C.

## II. MEMORANDUM AND REQUEST FOR VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES.

### A. THE SECTION 3553(a) FACTORS TO BE CONSIDERED

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentence available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. Section 3553 (a)(1), (a)(3), (a)(5)-(7).

Neither the statute itself nor United States v. Booker, 543 U.S. 220 (2005) suggests that any one of these factors is to be given greater weight than any other factor. However, it is important, for the Court, to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

### B. USE OF INFORMATION UNDER SECTION 3661

Under 18 U.S.C. Section 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". This statutory language certainly overrides the (now-advisory) policy statements

in Part H of the sentencing guidelines which list as "not ordinarily relevant" to sentencing a variety of factors such as defendant's age, educational and vocational skills, mental and emotional conditions, etc. This Court can consider the following factors: that Ms. Denton, a 63 year old, has led an exemplary life, is a first time offender, has very serious medical health issues including a stroke, is raising and home schooling two minor children (i.e., a 12 and 7 year old) with special needs, the at risk factors associated with the Delta Variant COVID-19 strain, her minimal mitigating role, and her aberrant behavior when in comparison with the sophisticated co-conspirators. All of these factors reflect the very low likelihood of recidivism and support a probationary sentence.

### C. LEGAL DISCUSSION AND APPLICATION

It has always been said that sentencing is:

> [A] difficult art [and it] is easy to make it mechanical. It is impossible to make it scientific in the sense of a hypothesis validated or invalidated by experiment. It is, however, an act of reason as the judge looking at this particular person and the circumstances of the crime that this particular person has committed makes a judgment following the prescriptions of the statute.

*United States v. Diaz Argueta,* 447 F. 3d 1167 (9th Cir. 2006).

Pursuant to *United States v. Booker,* guidelines are no longer mandatory and the final sentence has to withstand a "reasonableness" review, 543 US 220, 221 125 S. Ct.

738, 160 L. Ed.2d 621 (2005); See also *Rita v. United States,* 551 US 338, 127 S.Ct. 2456, 168 L.Ed.2d 203(2007); *Kimbrough v. United States,* 552 US 85, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007); *Gall v. United States,* 552 US 38, 128 S.Ct. 586, 169 L.Ed. 445 (2007) what is reasonable falls within the discretionary purview given to the sentencing judge. In *Gall,* the district court was affirmed in its sentence of probation, in part, for the defendant's age at the time of the offense conduct. Mr. Ojeda is 52 years old.

Under Gall, the district court must impose a sentence that is both procedurally and substantively reasonable. Gall, 128 S. Ct. at 597; *United States v. Ireke*, 2008 WL 862694 (11th Cir. April 1, 2008). In order to impose a sentence that is procedurally reasonable, the district court must correctly calculate the advisory guideline level, treat the guidelines as advisory and not mandatory, consider all of the statutory factors contained in 18 U.S.C. § 3553(a), make correct factual findings and provide an adequate explanation for the sentence imposed. Gall, 128 S. Ct. at 597. If a sentence is procedurally sound, it may only be overturned if an appellate court determines that it is substantively unreasonable after considering the totality of the circumstances under an abuse of discretion standard. Gall, 128 S. Ct. at 597; *United States v. Pugh*, 515 F. 3d 1179, 1191 (11th Cir. 2008).

Everything boils down to the sentencing court imposing a sentence that is both procedurally reasonable and substantive reasonable in light of the *18 USC§3553(a)2* factors. *Gall,* 228 S. Ct. at 600. And no guideline sentence should be presumed "reasonable." See *United States v. Talley,* 431 F. 3d 784, 787-88 (11th Cir. 2005)("[W]e reject the argument of the United States that a sentence within a guideline range is *per-se* reasonable … After *Booker,* our ordinary expectation [that within guidelines is reasonable], still has to be measured against the record")

In application, the Eleventh Circuit has affirmed numerous below guideline sentences since Booker even without cooperation. *See United States v. Ferguson*, 942 F. Supp. 2d 1186 (M.D. Ala. 2013)(granting a downward variance from an advisory guidelines range of 10 to 16 months imprisonment to a sentence of four (4) years' probation with a special condition of eight (8) months home confinement, based on defendant's schizoaffective disorder, post-traumatic stress disorder (PTSD) and neurocognitive limitations, which left defendant particularly vulnerable to manipulation and coercion of more sophisticated actors); *United States v. Yenisell Fayula*, Case No. 20-20032-CR-MIDDLEBROOKS (S.D. Fla. July 14, 2020)(granting a downward variance, in a conspiracy to commit medicare and wire fraud case, from a guidelines imprisonment range of 27 to 33 months imprisonment to four (4) years probation with special condition of twenty-four (24) months of home detention electronic monitoring, restitution of $425,704.00, based on medical condition of defendant, a 50 year old first time offender, who suffered from high blood pressure, her spouse who suffered from heart disease including a previous massive heart attack, and the at risk safety concerns of incarceration due to the COVID-19 coronavirus); *United States v. Eduardo Arango Chong,* Case No. 2:18CR237-1(U.S. District Court of New Jersey Dec. 21, 2020; DE: 45)(a health care fraud case where the court granted a 5K1.1 motion and varied downwards, from 46 to 57 months imprisonment, to Time Served, which was 22 days of incarceration, with 3 years of supervised release, and restitution in the amount of $1,135,128.10; defendant was a 32 year old, first time offender with no medical ailments, who had, at one point, tested positive for COVID-19 but was negative, and to avoid sentencing disparity; *United States v. Carl*

*Crawford*, Case No.: 14-CR-20206-BLOOM (S.D. Fla.)(finding that an 84 months sentence of imprisonment was "sufficient, but not greater than necessary" where advisory guidelines range was 188 to 235 months imprisonment); *United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005)(holding a sentence 1/10 the length of the 20-year statutory maximum sentence was reasonable); *United States v. Gray*, 2006 WL 1752372 (11th Cir. June 28th, 2006) (affirming 72 month sentence even though low end of guidelines was 151 months); *United States v. Halsema*, 2006 WL 1229005 (11th Cir. May 9th, 2006)(unpublished) (affirming 24 months sentence even though guidelines were 57-71 months and even though grounds for variance would not have supported departure); *United States v. Williams*, 435 F. 3d 1350 (11th Cir. 2006)(90 months imprisonment was sufficient, but not greater than necessary to punish, deter and rehabilitate defendant even though low end of guidelines was 188 months.) Now that the guidelines are advisory only, they are simply "one sentencing factor among many." United States v. Reinhart, 442 F. 3d 857, 864 (5th Cir. 2006); *United States v. Duhon*, 440 F. 3d 711, 715-16 (5th Cir. 2006). Accordingly, the Court has full discretion to sentence below the advisory guideline range without a motion for downward departure as long as the resulting sentence is reasonable. *United States v. Williams*, 456 F. 3d 1353, 1363 (11th Cir. 2006).

  Here, the strict application of the advisory sentencing guidelines produces a sentence greater than necessary for punishment under § 3553(a). The guidelines are advisory as per *Booker* and not to be applied as mandatory. If they are applied as if so they are mandatory then we are back to the days pre-*Booker*. This Court must consider the individual history of the defendant, her character, her role, her medical health history,

her family circumstances, the risk factors associated with the COVID-19 Delta variant, etc. A sentence beneath the advisory guidelines for Ms. Denton in this case is warranted. The statutory factors set forth in 18 U.S.C. § 3553(a) weigh strongly in favor of a sentence outside of and below the advisory sentencing guidelines. *See* [DE: 38] at pages 4-5 of the 3553(a) Factors/Variance Request section of the Memorandum of Law.

### C. THE NEW PANDEMIC, THE DELTA VARIANT COVID-19 STRAIN AND MS. DENTON'S RISK FACTORS.

Ms. Denton is 63 years old, overweight, and with major medical ailments. (See paragraphs 73-77 of the PSR; a stroke, hypertension/high cholesterol, etc.) She is 5'5" tall and weighs 210 lbs. The CDC has from the commencement of the original pandemic in March 2020 said that individuals over 60 and overweight or obese have the highest risk of serious illness or death of contracting the COVID 19 Virus. The new medical data concludes that the DELTA VARIANT COVID-19 STRAIN, is more contagious and more dangerous than the original virus and can and does make those vaccinated still susceptible to contracting the virus.

A major worry right now is Delta, a highly contagious SARS-CoV-2 virus strain, which was first identified in India in December. It then swept rapidly through that country and Great Britain before reaching the U.S., where it is now the dominant variant. The CDC described Delta as more transmissible than the common cold and influenza, as well as the viruses that cause Ebola, smallpox, MERS, and SARS, Ebola-and called it as contagious as chickenpox in an internal document, a copy of which was obtained by and reported on in

-7-

The New York Times. The highest spread of cases and severe outcomes is happening in places with low vaccination rates, and virtually all hospitalizations and deaths have been among the unvaccinated, the CDC says. (https://www.yalemedicine.org/news/5-things-to-know-delta-variant-covid).

The coronavirus's delta variant is different from earlier strains of the virus in worrying ways, health officials are discovering. And those differences may mean a return to some of the restrictions that vaccinated people thought were in the past. The variant is not only more contagious than earlier strains, it also makes people sicker. And even vaccinated people, can get infected and house similar levels of viral particles in their noses as unvaccinated people, raising concern about the vaccines' ability to curb transmission, new data indicate. But experts caution that there's more to infectiousness than just those viral levels in the nose. (https://www.sciencenews.org/article/delta-variant-studies-cdc-coronavirus-covid-pandemic).

Some 350 of about 470 people, nearly 75 percent, who caught the coronavirus in a large outbreak in Barnstable County, Mass., were fully vaccinated, researchers report July 30 in Morbidity and Mortality Weekly Report. Public health officials linked many of those cases to packed indoor and outdoor events at places like bars and rental homes. The delta variant, which was first identified in India, was behind 120 of 133 analyzed COVID-19 cases, or 90 percent, in the outbreak. But while it may sound like the vaccine didn't do their job, the high proportion of cases in vaccinated people may be because of the county's high vaccination rate, the researchers say; as of July 3, 70 percent of those eligible in Barnstable County are vaccinated. As more people in a community get vaccinated, the likelihood that someone who tests positive for the coronavirus has protection from the shots also goes up. That's simply because the vaccines aren't 100 percent effective. Id.

Crucially, COVID-19 shots still protected vaccinated people from severe disease. While five people were hospitalized, including one unvaccinated person, as of July 27, no one had died. The U.S. Centers for Disease Control and Prevention estimates that 35,000 of the 162 million vaccinated people in the United States will develop a symptomatic infection every week. That's about 21 COVID-19 cases in every 100,000 fully vaccinated people getting sick each week. That compares with about 179 infections among every 100,000 unvaccinated people per week. Id.

As for hospitalization, two to three unvaccinated people out of every 100,000 will be hospitalized weekly with COVID-19 and roughly one person per 100,000 will die each week, according to CDC's calculations. That's about 25 times the number of fully vaccinated people facing the same fate. Among the fully vaccinated, 0.1 of 100,000 people will be hospitalized weekly and 0.04 per 100.000 will die each week. *Id.*

The Delta Variant can actually make people sicker. Three recent studies in Canada, Singapore and Scotland indicate that the variant raises the risk of hospitalization, intensive care unit admission and death. In Canada, epidemiologist Ashleigh Tuite at the Dalla Lana School of Public Health at the University of Toronto analyzed data from the province of Ontario to see if different coronavirus variants made people sicker. She and colleague David Fisman had information about who got infected and what the outcome of the infection was. Even after accounting for vaccinations, age and underlying health conditions, the delta variant carried a 120 percent increased risk of hospitalization, 287 percent increased risk of ICU admission and 137 percent increased risk of death, the researchers report July 12 at medRxiv.org. "And that's on top of what we see with alpha," Tuite says. *Id.*

In Singapore, a preliminary study in the Lancet posted June 7 to the preprint server SSRN found that the delta variant nearly doubles the risk of pneumonia compared with earlier strains and carries an increased risk of needing supplemental oxygen, being admitted to the ICU and dying. Those preliminary data haven't been reviewed by other scientists yet, but agree with data published in the Lancet June 14 from a study in Scotland. There, researchers found that the delta variant doubles the risk of hospitalization compared with the alpha variant. *Id*.

There is evidence that the vaccines work slightly less well against the Delta Variant than they did against earlier strains. Still, vaccination reduces the risk of these serious complications. Vaccines are like using an extinguisher on a kitchen fire, says Paul Offit, Director of Vaccine Education at the Children's Hospital of Philadelphia. "The goal is to keep the rest of the house from burning down." The virus can enter cells in the nose, throat and lungs and start to replicate there, "so you can have an asymptomatic infection or a mild disease," Offit says. But then, a vaccinated person's immune system will kick in after a couple of days and prevent the infection from causing more severe disease, he says. "It's easier to prevent moderate to severe disease than it is to prevent mild disease." *Id*.

Based on the latest medical data, Ms. Denton who is not vaccinated because of her concerns as to the effects of the vaccine on her already compromised immune system, with the rising cases of the Delta Variant, it would be inhumane to sentence Ms. Denton to a term of imprisonment when there are alternatives to incarceration.

### E. DOES CONTRACTING COVID-19 TRIGGER/CAUSE DIABETES?

This is a question that many doctors and researchers are trying to answer. "It's common during any serious illness or trauma for the body to react by raising blood sugar, causing hyperglycemia," said endocrinologist Herberto Valdes, M.D., with Baptist Health Medical Group. "But severe COVID has been associated with diabetes mellitus and

-10-

worsening glucose control. The virus attaches to ACE2 receptors, which are present in pancreatic cells." From the start of the pandemic, there have been warnings that people with underlying health conditions are more susceptible to COVID-19. If you have diabetes, it does not mean you are more likely to get COVID-19, DR. Valdes explained. "However, it does mean that if you do get COVID-19, you are at a higher risk of having a more severe case of more complications," he said. (See https://baptisthealth.net/baptist-health-news/covid-19-can-it-cause-diabetes/ ).

The incoming data seems to indicate that there is a connection between contracting COVID-19 and thereafter being diagnosed with diabetes. More than 350 clinicians have submitted reports to the registry, The Guardian reported. They've reported both type 1 diabetes, in which the body attacks the cells in the pancreas that produces insulin, type 2 diabetes, in which the body still produces some insulin, though often not enough, and its cells don't respond properly to the hormone. "Over the last few months, we've seen more cases of patients that had either developed diabetes during the COVID-19 experience or shortly after that," Dr. Francesco Rubino, a professor and chair of metabolic and bariatric surgery at King's College London, told The Guardian. "We are now starting to think the link is probably true — there is an ability of the virus to cause a malfunctioning of sugar metabolism."

Other studies have found a link between COVID-19 and diabetes. For example, a review of eight studies, which included more than 3,700 hospitalized COVID-19 patients, showed that roughly 14% of these patients developed diabetes, Scientific American reported. A preliminary study of 47,000 U.K. patients found that 4.9% developed diabetes, The Guardian reported. "We clearly see people without previous diabetes developing

diabetes," Dr. Remi Rabasa-Lhoret, a physician and metabolic disease researcher with the Montreal Clinical Research Institute, told CTV News. "It is highly probable that COVID-19 is triggering the disease". (See: https://www.livescience.com/covid19-may-trigger-diabetes.html ).

The punishment of imprisonment has gone from what was supposed to be "sufficient but not greater than necessary" to a possible death sentence. This is clearly a factor that was never taken into consideration by the U.S. Sentencing Commission.

**(III)** **THE KINDS OF SENTENCES AVAILABLE**

Title 18 U.S.C. § 3553 (a) expressly dictates that "[t]he Court shall impose a sentence sufficient, *but not greater than necessary,* to comply with the purposes set forth in ¶(2) of this subsection" (emphasis supplied). As Judge Rakoff pointed out in *Adelson,* the operative word in this congressional mandate, is "necessary." 441 F. Supp. 2d at 515. Under Factor 3 in § 3553 (a), Congress directs the Court to consider a wide range of alternatives to imprisonment if the availability of those alternatives would render a prison sentence "unnecessary."

A sentence of two (2) years of probation with restitution will accomplish this goal in the present situation. This will ensure the safety of Ms. Denton and allow for her to continue to attend to the home schooling and special needs of the two (2) minor children.

**(IV).** **CONCLUSION**

Arriving at a fair and just sentence cannot be reduced to a mere computation of the advisory guidelines. The whole person and the specific characteristics involved must be taken into account.

A sentence of two (2) years of probation is sufficient but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553 (a).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, this 26th day of September, 2021.

Respectfully submitted,

MANUEL GONZALEZ, JR., ESQ.
121 Alhambra Plaza
Suite 1500
Coral Gables, Florida 33134
(305) 444-1400
(305) 938-5009 (Fax)
Mannylaw7@yahoo.com (e-mail)


BY: /s/Manuel Gonzalez, Jr.
    MANUEL GONZALEZ, JR., ESQ.
    FLORIDA BAR NO. 397997

-13-